# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

<table>
<tr><td>In the Matter of the Search of</td><td>)</td><td rowspan="5">Case No.   2:23-sw-0223 JDP</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Information associated with the Instagram account</td><td>)</td></tr>
<tr><td>mr_bulkybands, that is stored at premises controlled by Meta</td><td>)</td></tr>
<tr><td>Platforms, Inc.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

<div style="border:1px solid black; text-align:center">
<strong>FILED</strong>

Mar 06, 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
</div>

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm and ammunition |
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute controlled substances |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☒ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____/s/ Lexi Loris_____
*Applicant's signature*

_____Lexi Loris, USMS Task Force Officer_____
*Printed name and title*

Sworn to me and signed telephonically.

Date: _____March 6, 2023_____

_____
*Judge's signature*

City and state:   _____Sacramento, California_____      Jeremy D. Peterson, U.S. Magistrate Judge

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Lexi Loris, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Task Force Officer with the United States Marshal Service ("USMS").  I am a "Federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.  I have been a Sworn Peace Officer with the Roseville Police Department since June 2014.  I am currently assigned to the Placer County Special Investigation Unit ("PSIU") as a task force officer and have been so assigned since June 2019.  I have also been a Task Force Officer with the USMS Fugitive Apprehension Task Force since December 2020.  I have participated in more than 100 arrests in violent crime cases.

3.      I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

4.      Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause.

5.      This affidavit is based upon my own personal knowledge but also the knowledge of other law enforcement officers involved in this investigation. Where I describe statements made by other people (including other special agents and law enforcement officers), the statements are described in sum, substance, and relevant part. Similarly, where I describe information contained in reports and other documents or records in this affidavit, this information is also described in sum, substance, and relevant part.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), have been committed by Arnes KRAJINIC. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## <u>JURISDICTION</u>

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."

## PROBABLE CAUSE

8.      In January 2023, PSIU initiated an illegal cocaine sales investigation targeting Arnes KRAJINIC.  Through the investigation, it was discovered that KRAJINIC uses Meta Platform Inc. (also known as "Instagram") with the moniker "mr_bulkybands" to communicate, purchase, broker and arrange drug deals.  I became Instagram "friends" with KRAJINIC using an undercover Instagram account.  Upon reviewing KRAJINIC's posts and story, I observed photos and videos of illegal drugs and firearms including what I believe to be fentanyl and focaine.  Below are some of the photos I observed on KRAJINIC's Instagram page and in his Instagram stories:











9.      Based on these photos, I believe KRAJINIC was using the platform to sell illegal drugs and firearms.  Using my undercover Instagram page, I befriended KRAJINIC.

10.     On January 14, 2023, KRAJINIC posted a story to his page that included what I believed to be fentanyl, a firearm, and large amounts of cash (screenshots below on page 11). The story began with KRAJINIC asking if anyone needed EBT half off.  KRAJINIC then posted a video of a dark setting with music, however, in the video the muzzle of a gun can be seen close up to the camera. KRAJINIC then posted a still photo of a black firearm in his lap with the tag,

"Oakland bound."  Based on my training and experience, I know that Oakland and San Francisco are a hub for larger purchases of fentanyl and cocaine and a primary location that Sacramento and Placer County drug dealers source their product from due to the cheaper bulk pricing available in those areas.

11.     KRAJINIC then posted a still photo of what appears to be an open bag with a firearm, fentanyl pills (m30's or "blues) and a wrapped and rubber banded item, which I believe, based on my training and experience in illicit narcotics sales, to be packaged in a manner consistent with a controlled substance.  Finally, KRAJINIC posted a video of him and a female counting large amounts of money with the tag "Lash season, black hoodie season Oakland Ca".  Based on my training and experience, I know that "black hoodie season" is a slang term used to describe committing robberies or crimes in general.  I recognize the appearance of the aforementioned controlled substances based on my training and experience as a police officer and narcotics task force agent.  I have observed such substances no fewer than ten times each, specifically the blue pills commonly found to be counterfeit M30 oxycodone pills containing fentanyl, with my beliefs later confirmed by crime lab results.  Below are screenshots of the videos I saw on KRAJINIC's story on January 14, 2023:







12.     Based on KRAJINIC's continued advertisement of illegal drugs, on Instagram, I sent him a message inquiring about the substances and firearms.  In summary, KRAJINIC advised the products were pure cocaine and fentanyl.  Below are screenshots of my conversation with KRAJINIC:







13.     As seen in the messages, KRAJINIC sent a photo of what appeared to be approximately a 1/2 pound of cocaine and his phone number.  Based on my training and experience, I know that the term "blues" refers to M30 fentanyl pills, "zans" refers to Xanax, "fetty" refers to fentanyl, and "zips" and "boats" refer to different amounts of product. KRAJINIC and I continued our conversation via text messages using the phone number he provided on Instagram.  Over text, KRAJINIC agreed to sell me 100 fentanyl pills and a half-

ounce of cocaine. KRAJINIC also advised he would be able to come to me in Roseville, which in in Placer County and in the Eastern District of California.

14.     On January 16, 2023, KRAJINIC messaged me and said he would come to Roseville to meet me tomorrow (January 17, 2023). KRAJINIC said, "I'll bring my stuff with me . . . and let you choose what you want." On the evening of January 16, 2023, KRAJINIC called me to confirm our meeting on the morning of January 17, 2023. We continued communicating over the phone and I sent KRAJINIC an address for where to meet me.

15.     On January 17, 2023, at approximatley 12:11 p.m., a surveilling law enforcement officer saw a male wearing a ski mask on his face and a yellow sweatshirt driving a white Mercedes Benz westbound on Junction Blvd. The vehicle pulled onto Revere Drive, one street from the pre-determined meeting location, and pull the car over to the side. Law enforcement observed the male exit the vehicle and begin digging in the trunk and walking about the vehicle. Law enforcement was able to identify the subject at KRAJINIC, as he was wearing the same outfit that he was seen wearing in his Instagram story where he was flaunting his cash in a parking lot.

 

16.     A short time later, KRAJINIC arrived at the pre-determined meeting location driving the white Mercedes. Law enforcement contacted KRAJINIC found him in possession of

at least 100 grams of fentanyl, 150 prescription pills, packaging, a functioning digital scale, over $7,000 cash, and a non-serialized firearm loaded with six rounds of 9mm ammunition.

17.     Since KRAJINIC has been in custody, I have reviewed several of his phone calls. In these phone calls, KRAJINIC admits to communicating and "being set up" by an undercover officer using his Instagram account.  KRAJINIC even refers to his handle, "mr_bulkybands" in these conversations. On one occasion, a friend told KRAJINIC that is why he does not have social media accounts.

18.     Based in part on the foregoing, the Honorable Carolyn K. Delaney signed an arrest warrant and criminal Complaint charging KRAJINIC with one count of being a felon in possession of ammunition (2:23-mj-25-CKD).  Additionally, I submit there is probable cause KRAJINIC violated 21 U.S.C. § 841(a)(1), possession with intent to distribute controlled substances.  There is probable cause to believe that further evidence of these crimes will be found in KRAJINIC's Instagram account.

## BACKGROUND CONCERNING INSTAGRAM[1]

19.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.  Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

20.     Meta collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers.  Meta keeps records of changes made to this information.

21.     Meta also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

22.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

23.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.  Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.  For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service.  Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

24.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers).  Users can also "block" other

users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments.  Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

25.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users.  Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions.  Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users.  Users can also manually search for friends or associates.

26.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings.  Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

27.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos.  Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location.  These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them.  Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

28.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram.  Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their

username to a comment followed by "@").  An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

29.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.  Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted.  The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

30.     Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

31.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

32.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and

retains payment information, billing records, and transactional and other information when these services are utilized.

33.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Meta retains records of a user's search history and followed hashtags.

34.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

35.     Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content.  Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

36.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

37.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone

numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

38.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

39.     The stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation.  Based on my training and experience, I know that instant messages, voice messages, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

40.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

41.     Other information connected to the use of Instagram may lead to the discovery of additional evidence such as associated and linked accounts, stored communications, photos, and videos and may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

42.     Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

43.     Based on the forgoing, I request that the Court issue the proposed search warrant.

44.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

 /s/ Lexi Loris
Lexi Loris
Task Force Officer
United States Marshal Service

Subscribed to me and sworn telephonically on _____ March 6 , 2023

Honorable Jeremy D. Peterson
UNITED STATES MAGISTRATE JUDGE

Approved as to form by:

/s/ *Emily G. Sauvageau*
AUSA EMILY G. SAUVAGEAU

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with Instagram account "mr_bulkybands" (active on, but not limited to, January 1, 2023), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## **ATTACHMENT B**

### *Particular Things to be Seized*

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on February 27, 2023, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.   All business records and subscriber information, in any form kept, pertaining to the account, including:

1.   Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.   All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.   Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.   Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.   All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.   Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers from December 17, 2022 to January 17, 2023

7.   Privacy and account settings, including change history; and

8.     Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.     All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata from December 17, 2022 to January 17, 2023;

C.     All content, records, and other information relating to communications sent from or received by the account from December 17, 2022 to January 17, 2023 including but not limited to:

1.     The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.     All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.     All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.     All associated logs and metadata;

D.     All content, records, and other information relating to all other interactions between the account and other Instagram users from December 17, 2022 to January 17, 2023, including but not limited to:

1.     Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.     All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.     All contacts and related sync information; and

4.     All associated logs and metadata;

E.      All records of searches performed by the account from December 17, 2022 to

January 17, 2023; and

F.      All location information, including location history, login activity, information

geotags, and related metadata from December 17, 2022 to January 17, 2023.

Meta is hereby ordered to disclose the above information to the government within 14 days of

issuance of this warrant.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), involving Arnes KRAJINIC, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.      The sale of illegal ad illicit drugs and the illegal possession of firearms and ammunition.

B.      Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

C.      Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

D.      The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

E.      The identity of the person(s) who communicated with the account holder about matters relating to illegal drug sales and firearm possession including records that help reveal their whereabouts.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of )
)
INFORMATION ASSOCIATED WITH THE )
INSTAGRAM ACCOUNT MR_BULKYBANDS, THAT )    Case No.   2:23-sw-0223 JDP
IS STORED AT PREMISES CONTROLLED BY META )
PLATFORMS, INC. )
)

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

     An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     California    
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

     **YOU ARE COMMANDED** to execute this warrant on or before     March 20, 2023     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

     ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
     ☐   for     days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of       .

Date and time issued:     March 6, 2023 at 3:03 p.m.                _____
                                                      *Judge's signature*

City and state:     Sacramento, California              Jeremy D. Peterson, U.S. Magistrate Judge
                                                            *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                                          Date